■ ZURICH INSURANCE COMPANY, Appellant, v FRANKLIN E. WHITE, Individually and as Commissioner of the New York State Department of Transportation, Defendant and Third-Party Plaintiff-Respondent-Appellant. E. SMALIS PAINTING COMPANY, Inc., Third-Party Defendant-Respondent. (Action No. 1.) ZURICH INSURANCE COMPANY, Appellant, v E. SMALIS PAINTING COMPANY, INC., Respondent. (Action No. 2.) UNITED STATES FIRE INSURANCE COMPANY, Appellant, v E. SMALIS PAINTING COMPANY, INC., Respondent. (Action No. 3.) [633 NYS2d 415] —Peters, J. Appeals from an order of the Supreme Court (Harris, J.), entered May 25, 1994 in Albany County, which, *inter alia*, granted a cross motion by E. Smalis Painting Company, Inc. for summary judgment dismissing the complaints in action Nos. 2 and 3 and the third-party complaint in action No. 1.

In April 1984, the State Department of Transportation (hereinafter DOT) awarded a contract to E. Smalis Painting Company, Inc. (hereinafter Smalis) to clean and paint the Skyway Bridge in the City of Buffalo, Erie County. Such contract contained detailed insurance specifications which mandated that Smalis obtain liability insurance for the protection of both Smalis and DOT. According to the contract's stan-

dard specifications, Smalis was to provide DOT with a certificate, on DOT's forms, which certifies that insurance policies were issued in conformance with their specifications. Such specifications detailed, *inter alia*, that the limits of coverage were not to be amended by a deductible of any kind without prior consent.

Smalis thereafter presented DOT's insurance specifications, with a blank DOT certificate, to its insurance agency, John F. Gibson Agency (hereinafter Gibson). Gibson placed the primary comprehensive general liability coverage with Zurich Insurance Company (hereinafter Zurich) and umbrella liability coverage with United States Fire Insurance Company (hereinafter U.S. Fire). Gibson thereafter issued, on behalf of Zurich, original certificates of insurance, on the DOT form, to DOT and Smalis which expressly certified that the kinds and types of insurance required by the contract specifications had been procured and furnished. It further stated, on the face of the certificates, under penalties of perjury, that there were no deductible clauses of any kind which would affect the limitation of coverage specified on this project. Zurich thereafter issued, on June 5, 1984, an insurance policy to Smalis which applied not only to the Skyway Bridge construction project in New York, but also to Smalis' other operations in Ohio, West Virginia, Pennsylvania, Kentucky and Florida. In this policy, a $500 per claim deductible was included.

On June 15, 1984, Gibson issued on behalf of U.S. Fire original certificates of insurance, on the DOT form, to Smalis and DOT which again certified, under penalty of perjury, compliance with DOT's contract insurance specifications and the absence of a deductible of any kind. Renewal certificates were thereafter issued by both Zurich and U.S. Fire, when appropriate, which mirrored the original certificates.

Despite the efforts of both Smalis and DOT, which consisted, *inter alia*, of positioning and repositioning the tarps, cessation of work when the wind direction changed, notification to parking lots in the immediate area to close during certain days, changing the painting schedule to paint only on weekends, and actually moving an entire marina, cars and boats were nonetheless damaged by paint due to a process referred to as "overspraying." These claims were initially handled by Smalis or, when necessary, by Zurich. In June 1985, Zurich retained the insurance adjusting firm of Alfred Stager Agency (hereinafter Stager) to adjust the various claims.

In October 1985, when the work at the Skyway Bridge was substantially complete, Zurich notified Smalis and DOT that it

was retroactively disclaiming liability to May 31, 1985 since it believed that Smalis knew and expected the damage to occur after such date. Zurich further canceled its policy and sought to recover a $500 per claim deductible from Smalis for the claims that Zurich previously adjusted and paid. After a refusal by Smalis, Zurich commenced two actions for a declaratory judgment, one against DOT and one against Smalis, alleging that the claims after May 31, 1985 were not an occurrence within the meaning of the policy. As against Smalis, it further sought a declaration that it could collect the $500 deductible on each claim that it previously paid. U.S. Fire later commenced a similar action against Smalis contesting as well that the claims did not constitute an occurrence and, if they did, that they were one occurrence which began before its policy commenced.

Subsequent to extensive motion practice whereby the parties sought, in some form, a summary disposition of this matter, Supreme Court found that the overspray property damage claims were "occurrences" within the meaning of the policies of insurance. It further found that the certificates of insurance, issued prior to the actual policies of insurance, estopped Zurich from applying a deductible. Both Zurich and U.S. Fire appeal.

Like many liability insurance policies, the policy at issue here defines the term "occurrence" as an accident (*see, Saks v Nicosia Contr. Corp.*, 215 AD2d 832, 833-834; *Board of Educ. v Continental Ins. Co.*, 198 AD2d 816; *Ward v Security Mut. Ins. Co.*, 192 AD2d 1000, 1001, *lv denied* 82 NY2d 655) which results in damage or injury "neither expected nor intended" by the insured (*see, e.g., Saks v Nicosia Contr. Corp., supra*; *Ward v Security Mut. Ins. Co., supra*). To thus determine whether a particular event constitutes an "occurrence", the Court of Appeals, in *Continental Cas. Co. v Rapid-American Corp.* (80 NY2d 640), reasoned as follows: "such policy terms [are read] narrowly, barring recovery only when the insured intended the damages. Resulting damage can be unintended even though the act leading to the damage was intentional * * * A person may engage in behavior that involves a calculated risk without expecting that an accident will occur—in fact, people often seek insurance for just such circumstances" (*supra*, at 649 [citations omitted]; *see, Allstate Ins. Co. v Zuk*, 78 NY2d 41; *McGroarty v Great Am. Ins. Co.*, 36 NY2d 358; *Saks v Nicosia Contr. Corp., supra*; *City of Johnstown v Bankers Std. Ins. Co.*, 877 F2d 1146 [2d Cir]).

Here, we find that Smalis clearly intended to paint the bridge but by virtue of the acts undertaken both before and after the

claims of overspraying were revealed, did not intend to cause the resultant damages. Further, it is undisputed that Zurich and U.S. Fire each assessed the potential risks involved in insuring the painting contract before Smalis' inception of the work. Hence, we find that the Supreme Court correctly determined, based upon the extensive evidence submitted, that the damage was neither "intended" nor "expected" from the standpoint of the insured. Accordingly, summary judgment was appropriately granted against Zurich and U.S. Fire (*see, Saks v Nicosia Contr. Corp., supra*).

As to Zurich's attempt to enforce a $500 per claim deductible on each of the claims paid by asserting that the deductible was in the policy of insurance although concededly not in the certificate of insurance, we find no merit. Even when presented with a certificate of insurance naming two insureds on a form prepared by an insurance company when, in fact, only one was named in the actual policy, we found such certificate to estop the insurance company from denying coverage (*see, Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co.*, 151 AD2d 207, 210-211). Here, however, the certificates of insurance were on a form *devised by DOT* which notably incorporated by reference the detailed insurance specifications of the Skyway Bridge contract. It further recited that the issuing company certifies, under penalty of perjury, that no deductible would apply. The record further reflects that both DOT and Smalis relied upon these representations to their detriment. In addition, Zurich waited until after adjusting and paying hundreds of claims and after the painting was essentially complete before disclaiming coverage retroactively. By further acting in a manner which indicated its acknowledgement of a no deductible clause, we find that it prevented both Smalis and DOT from knowing that they should take further steps to protect themselves from liability. Hence, Zurich was properly found to be estopped from now asserting a claim for reimbursement (*see, Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443; *Bucon, Inc. v Pennsylvania Mfg. Assn. Ins. Co., supra*).

As to U.S. Fire's contention that Gibson had no authority to sign the policies that it issued to Smalis and DOT, we find no merit (*see, Cees Rest. v Lobdell*, 15 NY2d 275; *Neil Plumbing & Heating Constr. Corp. v Providence Washington Ins. Co.*, 125 AD2d 295). We further reject U.S. Fire's contention that there was a gap in coverage, as the record is devoid of evidence indicating adequate prior written notice to DOT either by Smalis or U.S. Fire.

Cardona, P. J., Mercure, White and Spain, JJ., concur.

Ordered that the order is affirmed, with costs to E. Smalis Painting Company, Inc. against Zurich Insurance Company and United States Fire Insurance Company.